# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **JEANINE A. GANNON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:07-CV-1057-N** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the District Court's Order of Reference, entered June 15, 2007, the District Court referred Plaintiff's social security appeal, filed June 14, 2007, to the United States Magistrate Judge for hearing, if necessary, and recommendation. This is an appeal from the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Jeanine A. Gannon's ("Plaintiff") claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") payments under Title XVI of the Social Security Act brought pursuant to 42 U.S.C. § 405(g) (2006). Commissioner filed a response on August 13, 2007. Plaintiff filed a reply on September 27, 2007. The Court reviewed the record in connection with the pleadings. For the reasons stated below, the Court recommends that the final decision of the Commissioner be AFFIRMED.

# I. BACKGROUND

## A.     Procedural History:

Plaintiff protectively filed an application for DIB on April 9, 2004.  (Tr. 17.)  Plaintiff also filed an application for SSI on October 15, 2004.  After both applications were denied initially and on reconsideration, Plaintiff properly filed for a hearing before Administrative Law Judge Walter Orr ("ALJ").  (Tr. 17.)  Plaintiff; a medical expert ("ME"), Charles M. Murphy, M.D.; and a vocational expert ("VE"), Joyce R. Shoop, testified at the hearing on June 13, 2006. (Tr. 17.)  Following the ALJ's decision denying Plaintiff disability, Plaintiff requested a review, which was denied on April 9, 2007 by the Appeals Council. (Tr. 5.)  After exhausting all of her administrative remedies, Plaintiff filed this action.

## B.     Factual History

### 1.     Plaintiff's Age, Education, and Work Experience:

Plaintiff was born on April 6, 1952.  (Tr. 306.)  At the time of the decision, Plaintiff was fifty-four years old and considered to be approaching advanced age.  *See* 20 C.F.R. § 404.1563. Plaintiff has the equivalency of a high school education.  (Tr. 307.)  She received vocational training in clerical typing.  (*Id*.)  She is considered to have a "high school education and above" for vocational purposes.  *See* 20 C.F.R. § 404.1564.  Prior to the onset of her alleged disability, Plaintiff's occupations included administrative assistant, temp worker, property manager, assistant auditor, and office manager.  (Tr. 125.)

### 2.     Plaintiff's Medical Evidence:

On July 19,1999, Plaintiff visited Dr. Don Christiansen.  She complained of numbness in her lower right leg and muscle spasms.  (Tr. 139.)  Dr. Christiansen diagnosed Plaintiff with an

acute lumbar sprain. (*Id.*) On September 1, 1999, a MRI conducted on Plaintiff by Dr. Christiansen's office revealed an impression of "a very broad diffuse disk protrusion at L4-L5 with fairly large right-sided disk herniation with inferiorly extruded disk material into the right lateral recess." (Tr. 144). On February 8, 2002, Dr. Christiansen diagnosed Plaintiff with hypertension, non-insulin diabetes mellitus, and hypothyroidism. (Tr. 125.)

Plaintiff visited the Central Dallas Ministries Community Health Services on July 12, 2004. (Tr. 179.) Progress notes reflect Plaintiff's concern over numbness progressing down her left arm. (*Id.*) The notes also indicate an increasing weakness in Plaintiff's right hip. (*Id.*)

On August 2, 2004, Plaintiff underwent a Snellen Test eye examination at MedTex Medical Testing and Examination Center ("MedTex"). (Tr. 160.) The test revealed that Plaintiff's eyesight in both her left and right eye was 20/30 uncorrected. (Tr. 160.) Plaintiff visited Dr. Julius Wolfram ("Dr. Wolfram") of MedTex on August 3, 2004, to obtain treatment for her preexisting conditions of diabetes, high blood pressure, and back problems. (Tr. 157.) After his examination, Dr. Wolfram stated that Plaintiff's external eye movements were normal, and Plaintiff's pupils were equal, round, and reactive to light. (Tr. 156.) Medical notes drafted by Dr. Wolfram indicated that in the previous eighteen months, Plaintiff had "developed multiple scattered areas of hypesthesia, involving her hands to the extent that sometimes she drops things because she is not aware that she is holding them." (*Id.*) While Plaintiff's gait and stance were normal, Plaintiff expressed right hip and left knee discomfort as a result of heel and toe walking. (*Id.*) Dr. Wolfram's clinical impressions were that Plaintiff's diabetes mellitus and hypertensive vascular disease were under control; Plaintiff's back problem was caused from arthropathy in the right hip; and Plaintiff's unexplained neurological symptoms could be due to

multiple sclerosis.  (*Id.*)  Plaintiff had no abnormal reflexes or loss of sensation, and Plaintiff's muscle strength was preserved throughout.  (*Id.*)  Dr. Wolfram also found Plaintiff's range of motion in her knees, wrists, shoulders, elbows, and cervical spine to be normal.  (Tr. 161-62.) Plaintiff's upper and lower extremity and grip strength were also normal.  (*Id.*)

On August 9, 2004, Dr. Arlan P. Larson ("Dr. Larson") interpreted a lumbosacral spine X-ray conducted on Plaintiff at MedTex.  (Tr. 159.)  Dr. Larson opined that Plaintiff was experiencing degenerative joint disease at L4 and L5.  (*Id.*)

On August 31, 2004, Dr. Walter Buell ("Dr. Buell"), a non-examining State Agency physician, completed a residual functional capacity ("RFC") report regarding Plaintiff.  (Tr. 163-70.)  Dr. Buell determined that Plaintiff had the capacity to occasionally lift and/or carry items weighing up to fifty pounds, and Plaintiff could frequently lift and/or carry items weighing up to twenty five pounds.  (*Id.*)  According to Dr. Buell, Plaintiff had the capacity to stand/and or walk for a total of six hours in an eight hour work day, and Plaintiff had the capacity to push/and or pull items with an unlimited weight.  (*Id.*)  Dr. Buell found that Plaintiff had no established postural, manipulative, visual, communicative, or environmental limitations.  (Tr. 165-67.)

On March 14, 2005, Plaintiff was again treated at Central Dallas Ministries Community Health Services.  (Tr. 241.)  At that time she was diagnosed with diabetes mellitus, hypertension, hyperlipidemia, hypothyroidism, Lichen Planus, and neuropathy.  (*Id.*)

On August 17, 2005, at Plaintiff's request, Dr. Demetria Smith ("Dr. Smith"), Plaintiff's treating physician at Central Dallas Community Health Services, completed a written evaluation form regarding Plaintiff's medical condition.  (Tr. 194-98.)  The evaluation was in the form of a checklist on which Dr. Smith circled and checkmarked various answers.  (*Id.*)  On the preprinted

evaluation form, Dr. Smith indicated that Plaintiff had the capacity to sit, stand/walk, and lie down/recline for periods of thirty minutes out of an eight hour work day. (*Id.*) Dr. Smith also indicated that Plaintiff would need the flexibility to change positions and elevate her legs frequently during an eight hour work day. (*Id.*) Plaintiff could never lift or carry objects over ten pounds, and Plaintiff's neuropathy would limit repetitive action involving simple grasping, pushing and pulling, and fine manipulation. (*Id.*) Likewise, Plaintiff would be limited in using her feet to operate foot controls. (*Id.*) Dr. Smith indicated that Plaintiff is not able to do the following: bend, squat, crawl, climb, reach up, stoop, crouch, and kneel. (*Id.*) According to Dr. Smith, Plaintiff can not tolerate the following: exposure to unprotected heights; being around moving machinery; exposure to marked changes in temperature; driving automotive equipment; exposure to dust, fumes, gases, smoke, and perfumes; and exposure to noise. (*Id.*) Dr. Smith opined that Plaintiff will need rest periods frequently during the day, and Plaintiff will probably miss work frequently due to exacerbations of pain. (*Id.*)

On March 9, 2006, Plaintiff saw Dr. Stephen Ozanne ("Dr. Ozanne") for evaluation of neck and lower back pain. (Tr. 221.) After reviewing a Central Dallas Ministries Health Center MRI study from February 10, 2005, Dr. Ozanne determined that at C5-6 and C6-7, "there is spurring and broad protrusion of disc, which results in right sided greater than central stenosis and lesser degree left sided stenosis of the canal. There is deformity of the ventral surface of the spinal cord." (Tr. 256-57.) The MRI of the lumbar spine dated September 1, 1999, was also reviewed. It showed degenerative disc changes and some stenosis at L4-5 and L5-S1. (*Id.*) Dr. Ozanne did not recommend surgery. (Tr. 221.) After examining Plaintiff, Dr. Ozanne noted that Plaintiff's "strength, sensation, and circulation are intact." (*Id.*)

**C.     The Hearing:**

The hearing before the ALJ convened on June 13, 2006.  (Tr. 17.)  At the hearing, Plaintiff appeared in person and was represented by her attorney, Catherine Coates.  Plaintiff, the ME, and the VE testified.  (Tr. 305-33.)  A summary of the testimony follows.

**1.     Plaintiff's Testimony:**

Plaintiff testified that at the time of the hearing she was fifty-four years old, five foot three and three-fourths inches tall, and weighed 198 pounds.  (Tr. 308.)  Plaintiff's occupations within the fifteen years prior to the hearing included the following: staffing company assistant, temp agency filer, apartment property manager/auditor, and office manager.  (Tr. 309-11.)

According to Plaintiff's testimony, she can no longer work in any of her prior occupational capacities.  (Tr. 311.)  Sitting at a desk would cause Plaintiff's arms and hands to fall asleep.  (*Id.*)  Plaintiff wears trifocals, which would result in shoulder and arm pain when she tilts her head to see out of her trifocals.  (*Id.*)  Plaintiff testified that she suffers from a "herniating and bulging disc in the lumbar area," as well as three herniated discs in her neck. She also has numbness in areas on her hands, legs, feet, back, and chest.  (Tr. 312.)

Plaintiff testified that her pain is the worst in her neck and shoulders.  (Tr. 314.)  Her legs are also very affected from the disc in the lumbar area.  (*Id.*)  For Plaintiff to have the capacity to engage in a two-block walk, Plaintiff must plan out her route to allow herself three opportunities to sit and rest.  (*Id.*)  Plaintiff has the capacity to stand for ten or fifteen minutes before experiencing so much discomfort that she is forced to sit down.  (*Id.*)  After thirty minutes, sitting becomes difficult, and Plaintiff is forced to get up and walk around.  (*Id.*) Plaintiff gets up two to four times a night because lying in bed becomes painful.  (Tr. 315.)

According to Plaintiff's testimony, she does not have the capacity to grip or hold on to items, and Plaintiff has to rely on others when she needs items opened. (Tr. 316.) Plaintiff also has trouble lifting items. (Tr. 315.) She can lift a ten pound bag of potatoes, but "it has to be very quick." (*Id.*) She does not have problems pushing or pulling because "if [she] is pushing something like a shopping cart [she] is usually leaning on it." (*Id.*) Plaintiff requires the use of a railing to climb stairs. (*Id.*) Plaintiff has trouble bending and kneeling. (*Id.*)

Plaintiff also testified that Dr. Smith prescribed various medications for her, including Gabapentin, which was originally prescribed to treat a shingles outbreak. (Tr. 313, 317.) Gabapentin causes plaintiff to experience extreme fatigue, for which she lies down three to four times a day for periods of thirty minutes to an hour and a half. (*Id.*) Gabapentin has also caused Plaintiff to experience dry mouth, mood changes, and weight gain. (Tr. 316.) Plaintiff's vision is also affected by Gabapentin. (*Id.*) While Plaintiff used to be an avid reader, she now has trouble reading pages from left to right. (Tr. 308.) "[She] might be on one line and all of the sudden [her] eyes will jump and [she] will be on another line." (Tr. 320.)

In her testimony, Plaintiff stated that she is a diabetic, and that she has hypertension. (Tr. 313.) Plaintiff has been diagnosed with a skin condition called Lichen Planus. (Tr. 317.) Individuals suffering with Lichen Planus usually also have Hepatitis. (*Id.*) Plaintiff tested negative for Hepatitis. (*Id.*)

Plaintiff testified that she prepares her own lunch, washes dishes, and cleans and vacuums her apartment. (Tr. 318-19.) Plaintiff grocery shops, sometimes alone, and also does laundry. (*Id.*) She does not attend church, go to meetings or movies, or visit friends. (Tr. 319.)

Plaintiff also finds it hard to visit her son or grandson, because "[she] would have to take three or four buses to get there and probably walk about two to three miles." (*Id.*)

### 2. The Medical Expert's Testimony

The ME testified that Plaintiff has "a history of lumbar disc herniation with an extruded disc and a central canal stenosis at L-4, 5… [Plaintiff] has some unexplained complaints of patchy sensory loss and also impairments of hypertension, diabetes, borderline low thyroid function and Lichen Planus." (Tr. 322.) The ME testified that Plaintiff's hypertension and diabetes are essentially non-severe conditions. (Tr. 321.) The ME determined that Plaintiff's skin condition, Lichen Planus, would be classified as non-severe because, at the time of the hearing, Plaintiff had not been suffering with this condition for at least twelve months. (Tr. 321.) According to the ME, Plaintiff's lumbar spine impairment is severe. (Tr. 322.) The ME testified that a cervical MRI conducted on Plaintiff shows protrusions at several levels and stenosis at C-5, 6 and C-6, 7. (Tr. 324) The ME saw no physical evidence that Plaintiff suffered from neuropathy. (*Id.*) The ME testified that "in August of 2004, [Plaintiff] was actually said to have a normal neurological exam including sensation and motor." (Tr. 324)

While the ME did not provide a complete RFC with regard to the number of hours that Plaintiff could stand, sit, or walk during a workday, the ME testified that Plaintiff would be "functionally limited to sedentary work. And occasionally postural activities. No climbing and avoid even moderate vibration." (Tr. 324.) The ME stated that there was no evidence of repetitive stress or cumulative trauma disorder. (Tr. 328.) In his testimony, the ME disagreed with Dr. Buell's evaluation of Plaintiff. (Tr. 325.) Dr. Buell rated Plaintiff at a medium in terms of functional limitations. (*Id.*) The ME testified that the Dr. Buell's diagnosis is "nondescript

and would indicate that [he had] not fully evaluated the record with evidence clearly in the record of a large herniation that is extruded." (Tr. 325.)

In his testimony, the ME commented on the letter written by Dr. Demetria Smith, Plaintiff's treating physician. (Tr. 326.) The ME stated that the letter was extreme, and Dr. Smith's letter was not a complete RFC analysis because the analysis uses an incomplete workday. In his testimony, the ME stated that there was no evidence that Plaintiff is incapable of postural changes, or that Plaintiff needs to keep her legs elevated. (*Id.*)

### 3. The Vocational Expert's Testimony

The VE testified that Plaintiff's prior positions as staffing company assistant, telemarketer, office manager, and audit clerk are sedentary occupations. (Tr. 330.) The VE testified that none of the RFC limitations suggested by the ME would preclude Plaintiff from any of Plaintiff's past relevant sedentary occupations. (Tr. 331.) Therefore, Plaintiff would be capable of performing her past relevant work as an administrative assistant, telemarketer, office manager, or audit clerk. Dr. Smith's RFC stated that Plaintiff had the capacity to sit, stand/walk, and lie down/recline for periods of thirty minutes out of an eight hour work day. (Tr. 194-99.) The ALJ posed the following hypothetical question to the VE regarding Dr. Smith's RFC: "Would there be any work that would exist consistent with, with [the] limitations [imposed by Dr. Smith]? Either Past relevant work or other work?" (*Id.*) The VE responded, "No, there would not be." (*Id.*)

### 4. The ALJ's Decision

The ALJ found Plaintiff has the following serious impairments: hypertension, diabetes mellitus with neuropathy, degenerative disc disease of the cervical spine, and a history of

herniated nucleus pulposus. (Tr. 21.) However, the ALJ found that Plaintiff's impairments do not meet the listing criteria to constitute a disability under 20 C.F.R.§§ 404.1509 and 416.909. (Tr. 22.) The ALJ determined that Plaintiff "has the residual functional capacity to sit six hours in an eight-hour workday, stand and/or walk two hours in an eight-hour workday, lift and/or carry less than ten pounds frequently and ten pounds occasionally, and push/or pull commensurate with her lifting limitations." (Tr. 22.) However, "[Plaintiff] has the additional non-exertional limitation of being unable to climb, balance, stoop, kneel, crouch and crawl on more than an occasional basis and inability to climb or tolerate less than moderate vibration." (*Id.*) The ALJ determined that Plaintiff's residual functional capacity limits Plaintiff to a restricted range of sedentary work activity. The ALJ relied on the VE's testimony in finding that "the claimant is capable of performing her past relevant work as an administrative assistant, telemarketer, office manager, and audit clerk." (Tr. 26.). Ultimately, because the ALJ determined that Plaintiff has the RFC to perform past relevant work under 20 C.F.R.§§ 404.1520(f) and 416.920(f) , the ALJ found that Plaintiff is not disabled.

## II. STANDARD OF REVIEW

To be entitled to social security benefits, a plaintiff must prove that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The Social Security Act defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes the individual from performing the individual's past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability.

*Leggett*, 67 F.3d at 564. If the claimant cannot perform past work, the burden shifts to the

Commissioner in step five to prove the claimant is able to perform other substantially gainful

activity. *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *Greenspan v. Shalala*, 38 F.3d 232,

236 (5th Cir. 1994).

The Commission's determination is afforded great deference. *Leggett*, 67 F.3d at 564.

Judicial review of the Commissioner's findings is limited to whether the decision to deny

benefits is supported by substantial evidence and to whether the proper legal standard was

utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C. § 405(g). Substantial evidence is defined as

"that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III. ANALYSIS

Plaintiff seeks reversal and remand for the following reasons: 1) "the ALJ's credibility finding is not supported by substantial evidence;" 2) "the ALJ failed to fully and fairly develop the record;" 3) "the ALJ failed to properly consider the opinion of Plaintiff's treating physician;" 4) "the ALJ's RFC finding is not supported by substantial evidence;" and 5) "the ALJ erred in finding that Plaintiff retains the ability to perform her past relevant work as normally performed in the national economy." (Pl.'s Br. at 1, 12.) The Commissioner responds that 1) "Substantial Evidence and Relevant Legal Precedent Support the ALJ's Residual Functional Capacity Assessment;" 2) "The ALJ Properly Assessed Gannon's Credibility and Discounted It for Legally Sufficient Reasons;" and 3) Gannon Failed to Satisfy Her Step Four Burden of Establishing That She Could Not Return to Her Past Relevant Work."

### 1.     The ALJ's Credibility Finding

The ALJ found that "[g]iven the objective findings and the numerous inconsistencies, I find that the claimant's subjective allegations and contentions of pain and resulting symptomatology are exaggerated and not entirely credible." (Tr. 24.) Plaintiff argues that the ALJ erred in his credibility determination for the following reasons: (1) the ALJ erred in his incomplete assessment of Plaintiff's daily activities; (2) the ALJ erred in failing to consider

Plaintiff's obesity as a severe impairment; and (3) the ALJ erred in failing to consider Plaintiff's alleged vision impairment. (Pl.'s Br. at 5, 7, 11.)

### A.       Plaintiff's Daily Activities

The Fifth Circuit has found that an ALJ may consider inconsistencies in a claimant's administrative hearing testimony in determining that the claimant's statements about her pain are not credible. *See Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002.)  In fact, a claimant's inconsistences between her testimony regarding her limitations and her daily activities can be "quite relevant in evaluating [her] credibility." *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990).  In *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988), the Fifth Circuit found that the ALJ properly considered Plaintiff's testimony that she cleaned house, cooked, shopped for groceries, and did the laundry in finding an inconsistency regarding Plaintiff's subjective allegations of pain and Plaintiff's participation in her daily activities.

In the case at bar, Plaintiff testified that she has problems with her grip strength, drops things, and has to rely on others when she needs items opened.  (*Id.*)  She stated that she has a difficult time bending from the waist down.  (Tr. 316.)  Plaintiff also testified that she suffers from numbness in her legs feet and chest, and her worst pain is in her neck and shoulders.  (Tr. 314-15.)  However, Plaintiff is able to use her hands to prepare herself food and wash dishes.  (Pl.'s Br. at 5; Tr. 318.)  Likewise, despite Plaintiff's testimony that she has difficulty gripping and holding onto objects, Plaintiff is able to grocery shop alone, and she has the ability to hold and lift a ten pound bag of potatoes.  (Tr. 315.)   According to her own testimony, despite Plaintiff's neck and back pain, Plaintiff is able to push and pull a shopping cart, lift a ten pound bag of potatoes into a cart, houseclean, sweep the kitchen floor, vacuum, and do laundry.  (Tr.

314-19.)  This Court finds that Plaintiff's inconsistencies between her allegations of pain and daily activities provide substantial evidence to support ALJ's credibility determination.

Plaintiff contends that the ALJ's partial reliance on Plaintiff's daily activities as support for the ALJ's credibility findings is without merit.  (Pl.'s Br. at 4.)  Plaintiff disputes the context in which some of her statements were used.  (Pl.'s Br. at 5)  In particular, Plaintiff alleges that the ALJ erred by using Plaintiff's testimony to determine that Plaintiff was capable of using public transportation, when, in fact, Plaintiff never testified that she was capable of using public transportation. (*Id*.)  In the case at issue, even if this Court were to find all arguments regarding the ALJ's reliance on Plaintiff's testimony as true, reversible error would not exist; the record provides substantial evidence to show that Plaintiff's daily activities evince an ability to work. *See Bowling v. Shalala*, 36 F.3d 431 (5th Cir.1994).  This Court, therefore, finds that the ALJ's credibility determination is supported by substantial evidence.

### B.        Plaintiff's Obesity

Plaintiff argues that the ALJ erred in failing to consider Plaintiff's obesity as a severe impairment, because "had Plaintiff's obesity been properly considered, the ALJ would likely not have found Plaintiff's subjective complaints to be 'exaggerated,' and would have properly considered her testimony that she is disabled."  (Pl.'s Br. at 7.)  According to SSR 02-1p, obesity is a severe impairment "when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."   However, as SSR 02-1p states, an ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional

14

limitations of the other impairment. [The ALJ] will evaluate each case based on the information in the case record."

In the Ninth Circuit case, *Burch v. Barnhart*, 400 F.3d 676 (9th Cir 2005), the plaintiff alleged that the ALJ erred in failing to properly consider Plaintiff's obesity as a severe impairment. *Burch,* 400 F.3d at 681-82. The Ninth Circuit found that "[t]he medical record is silent as to whether and how claimant's obesity might have exacerbated her condition. Moreover, claimant did not present any testimony or other evidence at her hearing that her obesity impaired her ability to work." *Id.* at 683. The Ninth Circuit, therefore, found that the ALJ did not err in failing to find Plaintiff's obesity as a severe impairment. *Id.* at 682.

In the present case, Plaintiff's treatment notes and medical diagnoses do not indicate that Plaintiff suffers any limitations due to her obesity or that her obesity exacerbates her other impairments. Plaintiff's administrative hearing testimony does not support Plaintiff's allegation regarding her obesity. The only testimony that Plaintiff provided regarding her obesity was that she was five feet and three and three-fourths inches tall, and her normal weight has been around 180 pounds, but her current weight is 198 pounds. (Tr. 308.) Substantial evidence does not exist to support Plaintiff's allegation that her obesity has increased the severity of her other impairments.

In the Seventh Circuit case, *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004), the plaintiff alleged that the ALJ failed to consider his weight in deciding whether Plaintiff was disabled. The ALJ did not explicitly address Plaintiff's obesity. *Id.* The Seventh Circuit nonetheless found that "the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not

explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions." *Id.* Therefore, the Seventh Circuit determined that substantial evidence existed to support the ALJ's finding. *Id.* at 505.

In this case, the ALJ did not explicitly address Plaintiff's obesity. (Tr. 19-26.) However, as stated in the ALJ's decision, when assessing Plaintiff's RFC, the ALJ "must consider all of the claimant's impairments, including impairments that are not severe." (20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p; Tr. 18-19.) As addressed above, Plaintiff testified as to her height and weight at her administrative hearing. References to Plaintiff's obesity are within the medical evidence. The physicians who provided RFC assessments to the ALJ were aware of Plaintiff's obesity, and any limitations posed by Plaintiff's obesity, therefore, would have been reflected in the physicians' RFC assessments. The ALJ also directly indicated his awareness of Plaintiff's weight when he referenced Plaintiff's administrative hearing testimony regarding her weight. (Tr. 23.) The ALJ even acknowledged Plaintiff's testimony that her current weight is greater than her normal weight. (*Id.*) Therefore, substantial evidence exists to support the conclusion that Plaintiff's obesity was properly considered in determining Plaintiff's RFC. Moreover, even if the ALJ erred in this regard, Plaintiff has not shown that she was prejudiced. The error was, at most, harmless. *See Mays v. Bowen* 837 F.2d 1362, 1364 (5th Cir. 1988).

## C.    Plaintiff's Alleged Vision Impairment

Plaintiff contends that the medical record supports Plaintiff's complaints of neuropathy and vision problems. (Pl.'s Br. at 11.) In his opinion, the ALJ found Plaintiff's neuropathy to be a severe impairment and considered it. Therefore, while examination of Plaintiff's alleged

vision impairment is warranted, further discussion regarding Plaintiff's neuropathy is not warranted.

Plaintiff argues that the ALJ erred in failing to consider her vision problems as an impairment. (*See* Pl's Br. 11)  Plaintiff asserts that her vision problems are a side effect of a prescribed drug, Gabapentin  (Pl.'s Br. at 13.)  An impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [Plaintiff's] statement of symptoms."  20 C.F.R. § 404.1508.  In other words, "objective medical evidence must demonstrate the existence of a condition that could reasonably be expected to produce the level of pain or other symptoms alleged."  *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992).  Plaintiff has not supported her argument with any objective evidence.  As the sole support for her argument, Plaintiff relies on a doctor's report that included Plaintiff's subjective complaint of blurred vision.  (Tr. 298.)  This assertion is by no means objective medical evidence.  Ultimately, while the ALJ must consider Plaintiff's subjective complaints, the ALJ can use objective medical evidence to determine if claimant's complaints are credible.  *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).  In determining credibility, the ALJ can consider the lack of external manifestations of pain.  *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Plaintiff's medical record contains an August 3, 2004, medical report prepared by Dr. Wolfram, an examining physician. In his report, Dr. Wolfram found that Plaintiff's external eye movements are normal.  (Tr. 156.)  Since Dr. Wolfram's examination date, Plaintiff has failed to present any eye examination records which indicate involuntary eye movement.  Therefore, this Court finds that Plaintiff has failed to provide substantial evidence to support Plaintiff's allegation that the ALJ erred by failing to find a severe vision impairment.  Additionally, even if

the ALJ should have found a severe vision impairment, Plaintiff failed to show how she was prejudiced.

**2.      The ALJ's Alleged Failure to Develop the Record**

Plaintiff contends that the ALJ erred in failing to obtain a second consulting physician's opinion.  Plaintiff also argues that the ALJ incorrectly relied on the ME's testimony (which she describes as inaccurate) as support for his credibility determination.  Plaintiff frames these issues in terms of ALJ's failure to fulfill his duty to fully and fairly develop the evidence. (Pl.'s Br. at 12.)

Plaintiff correctly states that the ALJ has a duty to fully develop the record. *Kane v. Heckler*, 731 F.2d 1216 (5th Cir.1984).  Plaintiff asserts that "instead of fulfilling his duty to properly develop the record regarding Plaintiff's numerous complaints and diagnoses regarding her impairments, the ALJ simply found the testimony 'not entirely credible' and 'exaggerated.'" (Pl.'s Br. at 12.)

**A.      The ALJ's Failure to Obtain a Second Consulting Physician's Opinion**

Plaintiff first asserts that "if the ALJ did not believe there was sufficient objective evidence regarding Plaintiff's complaints of vision problems, pain, and numbness, he should have obtained an opinion from a second consulting physician." (Pl.'s Br. at 12.)  In a footnote, Plaintiff recognizes that a second consulting physician's report is on file, but the report does not consider Plaintiff's vision impairment.  (*Id.*)  This Court, therefore, will focus on whether the ALJ erred in failing to obtain a second consulting physician's opinion regarding Plaintiff's alleged vision impairment.

The Fifth Circuit has found that "[a] consultative evaluation becomes 'necessary' [to develop a full and fair record] only when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). SSR 83-14 states that vision limitations could qualify as a non-exertional impairment. However, "isolated comments by a claimant are insufficient, without further support, to raise a suspicion of non-exertional impairment." *Brock*, 84 F.3d at 728.

In the Fifth Circuit case, *Jones v. Bowen*, 829 F.2d 524, 525 (5th Cir. 1987), the claimant argued that the ALJ had failed to develop the record by not requesting a psychological examination to explore the claimant's non-exertional mental impairment. The Court noted that the claimant did not list his mental impairment in his original request for benefits. *Id.* at 526. The Court also stated that the record did not show any indication that the claimant had ever requested a consultative examination. *Id.* To support his mental impairment argument, the claimant relied on physician notes that documented the claimant's subjective complaints. *Id.* The Fifth Circuit found the claimant's complaints to be isolated comments, which were insufficient to raise a suspicion of non-exertional impairment. *Id.*

In the case at bar, Plaintiff contends that "she believes her vision problems to be a side-effect of her medication, Gabapentin." (Pl.'s Br. at 11.). Plaintiff has indicated that she was first prescribed Gabapentin on November 6, 2005. (Tr. 122.) Plaintiff submitted her original request for benefits in 2004, and her appeals in October 2004, and January 2005. Therefore, unlike in *Jones*, Plaintiff could not have indicated her vision impairment on the original request. *Jones,* 829 F.2d at 525. However, Plaintiff also failed to list in the Memorandum in Support of a Finding of Disability, dated June 13, 2006, that she suffered from a vision impairment. (Tr.

125.)  Additionally, as in *Jones,* Plaintiff has not previously indicated that the record needed further development.  *Jones,* 829 F.2d at 525.  To support her alleged vision impairment, Plaintiff relies on a doctor's report that included Plaintiff's subjective complaint of blurred vision.  (Tr. 298.)  Plaintiff stated in her administrative hearing testimony that she suffers from involuntary eye movement.  However, in his medical report, Dr. Wolfram found that Plaintiff's external eye movements are normal.  (Tr. 156.)  This Court finds Plaintiff's subjective vision complaints to be isolated comments.  *Jones,* 829 F.2d at 525.  Because Plaintiff provides no other support for her vision impairment allegation, Plaintiff's isolated comments do not provide evidence sufficient to raise a suspicion concerning a non-exertional impairment.  *Brock*, 84 F.3d at 728.  Consequently, it was not necessary for the ALJ to obtain an opinion from a second consultative physician in order to develop the record.  *Brock*, 84 F.3d at 728.  Therefore, this Court finds that the ALJ fully and fairly developed the record in this case.

Despite the above findings, even if this Court were to find that the ALJ failed to fully and fairly develop the record, reversible error would not exist.  "The failure of the ALJ to develop an adequate record is not, however, ground for reversal per se"  *Kane*, 731 F.2d at 1220.  In addition, "the claimant must… show that she was prejudiced as a result of a scanty hearing. She must show that, had the ALJ done his duty, she could and would have adduced evidence that might have altered the result." *Id.*

In *Ware v. Schweiker*, 651 F.2d 408, 414 (5th Cir.1981)  the claimant, a former nurses' aid, alleged that the ALJ failed to develop the record because the ALJ failed to contact the claimant's physician to inquire as to whether the plaintiff had the ability to work as a nurses' aid. The Fifth Circuit found that "there is no evidence that the search or added evidence would have

been beneficial to [the claimant]." *Id.* Therefore, the Court found that the claimant's allegation that the ALJ failed to develop the record was not supported by substantial evidence. *See id.* Here, Plaintiff has presented no evidence to show that a second consulting physician's opinion would have provided evidence that would have changed the result. *Ware,* 651 F.2d at 414. Therefore, this Court finds that reversible error is not present.

## B. The ALJ'S Reliance on the ME's Allegedly Inaccurate Testimony

Plaintiff argues that the ALJ relied on the ME's inaccurate testimony as support for his credibility determination. (Pl.'s Br. at 12.) Plaintiff argues that the ME's statement that Plaintiff was originally prescribed Gabapentin for shingles is incorrect. (Tr. 286.) According to Plaintiff, if the ALJ or ME had been required to recognize that the medication was prescribed for a permanent condition, the ALJ would have been required to recognize the medication's side-effects when determining Plaintiff's RFC. (Pl.'s Br. at 14.)

A similar situation to the case at bar is presented in the Fifth Circuit case, *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). In *Carey*, the claimant argued that the ALJ erred in relying on the ME's inaccurate testimony. *Carey*, 230 F.3d 142. The ME testified that the claimant suffered from mild muscle damage, which the ALJ accepted. *Id.* After examining the medical evidence, the Fifth Circuit, however, determined that the claimant's muscle damage was much worse than mild; the Court found that the ME's testimony was not reflective of the claimant's true condition. *Id.* The Fifth Circuit found that the ME's inaccuracies present no reversible error. *Id.* The Court stated that the claimant's counsel had "thoroughly reviewed the relevant records and had even prepared a summary of the medical records, which was presented to the ALJ." *Id.* Therefore, "the ALJ had both accurate medical records and [the claimant's]

interpretation of the medical records available when the medical expert testified and when the ALJ issued her decision." *Id.*

In the current case, there appears to be controversy in the record as to why Plaintiff was originally prescribed Gabapentin. Plaintiff testified at the administrative hearing that she was originally prescribed Gabapentin for a shingles outbreak. (Tr. 317.) However, Plaintiff now contends that Plaintiff was originally prescribed Gabapentin for neuropathy, not shingles. (Pl.'s Br. at 13.) Even if this Court were to find that the ME's statement was inaccurate, no reversible error is present. As in *Carey*, in this case Plaintiff's counsel prepared and presented a summary of Plaintiff's medical records to the ALJ. *See Carey*, 230 F.3d at 142; (Tr. 124-29.) The ALJ had all of the evidence available, including Plaintiff's accurate medical records and Plaintiff's interpretation of the medical records prior to determining Plaintiff's credibility. *See Carey*, 230 F.3d at 142. Plaintiff failed to demonstrate that she "could and would have adduced evidence that might have altered the result." *Kane,* 731 F.2d at 1220. Therefore, this Court finds that Plaintiff's contention that the ALJ erred in relying on the ME's incorrect testimony is not supported by substantial evidence.

**3.      The ALJ'S Finding Regarding Dr. Demetria Smith's RFC Assessment**

Plaintiff argues that the ALJ erred in "[failing] to properly consider Dr. Smith's opinion regarding the limitations resulting from Plaintiff's impairments" for the following reasons: (1) the ALJ erred in failing to apply the 20 C.F.R. § 404.1527(d) six factor test, and (2) the ALJ erred in failing to assign proper weight to Dr. Smith's opinion. (Pl's Br. at 15-18.)

**A.      ALJ'S Failure to Apply 20 C.F.R. § 404.1527(d) Six Factor Test**

The ALJ must evaluate all medical evidence that has been received according to a six factor test. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000); 20 C.F.R. § 404.1527(d). However, if "reliable medical evidence from a treating or examining physician [controverts] a social security disability claimant's treating specialist" then the treating physician's opinion need not be analyzed according to the six factor test. *Newton*, 209 F.3d at 453. The Fifth Circuit has found that "the ALJ is free to choose among the conclusions of two examining physicians, even though one is the claimant's treating physician." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

In the current case, examining physicians, Dr. Wolfram and Dr. Ozanne provided reliable medical evidence that controverts the opinions of Dr. Smith. (Tr. 155-62, 194-99, 221.) In her RFC evaluation, Dr. Smith stated that Plaintiff would be limited in repetitive simple grasping, pushing and pulling, and fine manipulation. (Tr.194-99.) However, Dr. Wolfram indicated in his post-examination report that Plaintiff has normal grip strength and good upper and lower extremity strength. (Tr. 162.) Plaintiff has no loss of sensation, and her "muscular strength is preserved throughout." (Tr. 157.) Dr. Ozanne, indicated in his report that Plaintiff's "strength, sensation, and circulation are intact." (Tr. 221.) While Dr. Smith stated that Plaintiff had moderate objective signs of pain with regard to "nerve/muscle findings," Dr. Ozanne found that "mild muscular tenderness is noted in the cervical and lumbar area." (Tr. 197, 221.) After reviewing all the evidence in this case, the ALJ determined that Dr. Smith's statements "are inconsistent with other clinical and diagnostic findings." (Tr. 25.) This Court finds that, because Dr. Smith's opinion is inconsistent with other reliable medical evidence from examining

physicians, it was within the ALJ's discretion not to evaluate the letter using the six factor test outlined in the regulations.

**B.     The ALJ'S Failure to Assign Weight to Dr. Smith's Opinion**

Normally, "the opinions, diagnoses and medical evidence of a treating physician who is familiar with the claimant's injuries, treatment, and responses should be accorded considerable weight in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *see also* 20 C.F.R. § 404.1527(d). In fact, "[g]enerally, the opinion of a treating physician deserves to be given greater weight than that of a non-treating or consulting physician." *Carry v. Heckler*, 750 F.2d 479 (5th Cir. 1985)(citing *Oldham v. Schweiker*, 660 F.2d 1078, 184 (5th Cir. 1981)). However, an ALJ may assign little or no weight to the opinions of a treating physician if good cause is shown. *Newton*, 209 F.3d at 456-57 (citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994)). The Fifth Circuit has recognized that good cause "include[s] disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Greenspan,* 38 F.3d at 237 (citing *Scott*, 770 F.2d at 485).

**1.     Dr. Smith's Opinion is Brief and Conclusory**

In the Fifth Circuit case, *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995), the claimant alleged that the ALJ did not give proper weight to his treating physician's opinion that the claimant's condition was "chronic, refractory, and debilitating." *Id.* The Court commented that the treating physician provided neither an explanation as to his statement nor objective medical evidence to support his conclusion. The Court found that "the ALJ had good cause to place little emphasis on that isolated, conclusory statement." *Id*. In *Martinez v. Chater*, 64 F.3d 172, 175

(5th Cir. 1995), the claimant alleged that the District Court erred by failing to give proper weight to the opinion of his treating physician, which stated that the claimant was totally disabled. The Court found that the treating physician's opinion was entitled to no weight because he failed to provide a medical explanation to support his opinion. *Id*. at 176.

Similarly to the facts in both *Leggett* and *Martinez,* Dr. Smith provided no objective medical evidence to support her extreme limitations. (Tr. 194-99.) *See Leggett* 67 F.3d at 566; *See Martinez*, 64 F.3d at 175. In fact, the only explanation given by Dr. Smith to explain her findings was a brief, subjective response that Plaintiff's limitations resulted from weakness associated with neuropathy. (*Id.*) This Court finds that, because Dr. Smith's statements are brief and conclusory, the ALJ had good cause to assign no weight to her opinion.

### 2. Dr. Smith's Opinion is Unsupported by the Evidence

Despite the above findings, even if this Court were to find that Dr. Smith's opinion was neither brief nor conclusory, reversible error would not exist. The ALJ would have good cause to assign no weight to Dr. Smith's opinion because the opinion is unsupported by the evidence. For reasons previously discussed, this Court finds that Dr. Wolfram and Dr. Ozanne provided reliable medical evidence that controverts Dr. Smith's opinion. The Fifth Circuit has found that "[t]he ALJ may… reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is 'leaning over backwards' to support the application for disability benefits." *Scott*, 770 F.2d at 485 (citing *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir.1982)). In the his testimony, the ME described Dr. Smith's RFC assessment as going to an extreme. (Tr. 326.) He testified that there is no evidence in the record that Plaintiff would need to elevate her legs. (Tr. 327.) Likewise, according to the ME's testimony, there is neither

evidence that Plaintiff is incapable of any postural changes.  (*Id.*)  The ME also disagreed with Dr. Smith's indication that Plaintiff cannot tolerate exposure to dust, fumes, gases, smoke, and perfumes.  (*Id.*)  This Court therefore finds that because Dr. Smith's opinion is not supported by the evidence, the ALJ had good cause to assign her opinion no weight.

**4.    The ALJ'S RFC Finding**

"'Residual functional capacity,' as it is used in the Regulations, is a term of art which designates the ability to work despite physical or mental impairments."  *Hollis v. Bowen*,  837 F.2d 1378 (5th Cir. 1988) (citing *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir. 1983)).  Plaintiff first contends that had Dr. Smith's opinion been given proper weight, Plaintiff's RFC would have been further limited.  (Pl.'s Br. 19.)    For reasons previously discussed, this Court finds that the ALJ had good cause to assign Dr. Smith's opinion no weight.

Plaintiff next argues that the ALJ erred in relying on the ME to determine his RFC finding because the ME failed to properly consider evidence regarding Plaintiff's vision impairments or neuropathy.  (Tr. 19.)  Plaintiff asserts, therefore, that the ALJ'S RFC finding "is not supported by substantial evidence."  (Pl.'s Br. 20.)  For reasons previously discussed, this Court finds that the ALJ did not err in his failure to find as an impairment Plaintiff's alleged vision complaint.  Plaintiff is incorrect in her assertion that the ME did not properly consider evidence of Plaintiff's neuropathy. The ALJ found that Plaintiff has severe diabetes mellitus with neuropathy.  (Tr. 21.)  As the ALJ noted in his opinion, the ME opined in his testimony that Dr. Buell's RFC assessment regarding Plaintiff was not consistent with all the evidence.  (Tr. 24, 325.)  Dr. Buell determined that Plaintiff had the capacity to occasionally lift and/or carry items weighing up to fifty pounds, and Plaintiff could frequently lift and/or carry items weighing up to

twenty five pounds. (Tr. 164.) According to Dr. Buell, Plaintiff had the capacity to stand/and or walk for a total of six hours in an eight hour work day, and Plaintiff had the capacity to push/and or pull items with an unlimited weight. (*Id.*) The ME testified that he believed that Plaintiff should be limited to sedentary work. (Tr. 24, 324.) When the ALJ asked him why his opinion differed from Dr. Buell's RFC assessment, the ME testified that the Dr. Buell "[had] not fully evaluated the record with evidence clearly in the record…" (Tr. 24, 325.) The ME went on to testify that Dr. Buell did not "[take] into account any evidence of neuropathy." (Tr. 24, 325.) The ALJ determined that Dr. Buell had not evaluated Plaintiff with evidence of her documented neuropathy. (Tr. 24.) After considering all the evidence, including the ME's testimony concerning Plaintiff's neuropathy, the ALJ found that "the claimant is more limited in lifting, carrying, standing, and walking than found by [Dr. Buell]." (Tr. 25.) This Court, therefore, finds that the ALJ properly considered evidence of Plaintiff's neuropathy impairment in determining Plaintiff's RFC.

5. **The ALJ'S Finding Regarding Plaintiff's Ability to Perform Her Past Relevant Work**

Plaintiff contends that "the ALJ erred in finding that Plaintiff retains the ability to perform [telemarketing work]." (Pl.'s Br. 21.) To support her argument, Plaintiff points to her administrative hearing testimony, where she testified that she "ran" a telemarketing office. (Tr. 310, Pl.'s Br. 20.) When asked if she ever participated in any telemarketing duties, Plaintiff replied that she had not. (*Id.*) While the record provides no evidence that Plaintiff has ever worked as a telemarketer, this Court finds that the ALJ committed no reversible error.

"Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected… The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time" *Mays*, 837 F.2d at 1364. In *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988), the claimant alleged that the VE's list of jobs that the claimant was capable of performing included machine usage jobs, which the claimant did not have the ability to perform. Therefore, the claimant alleged that "the hearing was inconsistent with the Appeals Council's remand order." The Fifth Circuit found that, even if claimant's contentions were true, the ALJ could rely on the VE's job listings that did not require machine usage. *Id*. The Court concluded that the ALJ's determination was not unsupported by substantial evidence, and claimant's substantive rights were not prejudiced. *Id*.

The facts in Morris are similar to the facts at issue in this case. In the current case, the VE testified at the administrative hearing that Plaintiff is capable of performing past relevant work as an administrative assistant, office manager, audit clerk, and telemarketer/office manager. (Tr. 25.) The ALJ found the VE's testimony to be credible, and he adopted the VE's determinations. (Tr. 26.) While the record indicates that Plaintiff had not performed past relevant work as a telemarketer, the ALJ found Plaintiff capable of performing other past relevant work. (Tr. 25.) Because Plaintiff is able to perform other past relevant work, Plaintiff is not disabled within the meaning of the Social Security Act.

Plaintiff relies on the Dictionary of Occupational Titles in arguing that "[t]he remaining jobs found by the ALJ, those of administrative assistant, office manager, and audit clerk, all require 'frequent' handling, with two of the three jobs also requiring frequent fingering… In addition, all of the jobs require 'frequent' near vision acuity." (Pl.'s Br. 21.) Plaintiff contends

that had the ALJ properly found Plaintiff's RFC to be further limited by Plaintiff's neuropathy and vision problems, the ALJ would have determined that Plaintiff is unable to perform any of her past relevant work. (Pl.'s Br. 21.) For reasons previously discussed, this Court finds that the ALJ properly considered Plaintiff's alleged vision impairment and Plaintiff's neuropathy impairment in determining Plaintiff's RFC and deciding that she could perform past relevant work. Plaintiff failed to meet her burden to show that she could not return to her past relevant work.

## IV. CONCLUSION

This Court hereby finds that substantial evidence and relevant legal precedent support the Commissioner's decision. Accordingly, this Court recommends that the District Court AFFIRM the Commissioner's decision.

It is so recommended, August 11, 2008.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).